UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------X
                                                    :
JOHN PAPPAS, et al.,                                :
                                                    :
                           Plaintiffs,              :
                                                    :
                                                    :          23-cv-6010 (LJL)
            -v-                                     :
                                                    :        OPINION AND ORDER
CITY OF NEW YORK,                                   :
                                                    :
                           Defendant.               :
                                                    :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/9/2024___

LEWIS J. LIMAN, United States District Judge:

Defendant the City of New York ("Defendant" or the "City") moves to dismiss the Third

Amended Complaint ("TAC") for lack of subject matter jurisdiction pursuant to Federal Rule of

Civil Procedure 12(b)(1) and for failure to state a claim for relief pursuant to Federal Rule of

Civil Procedure 12(b)(6), or in the alternative, to compel arbitration.  Dkt. No. 44.  For the

following reasons, the motion is granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the Court accepts the well-pleaded allegations of the TAC as

true.

Plaintiffs are eleven current and former Lieutenants and Sergeants of the New York City

Transit Police ("Transit Police") of the New York Police Department ("NYPD").  Dkt. No. 33

¶ 3.[1]  Each of the Plaintiffs is considered a "Dog Handler" by the NYPD.  *Id.* ¶¶ 4, 19–29.  They

are assigned a police dog owned by the NYPD to train and care for.  *Id.* ¶¶ 3, 6.  The police dogs

---

[1] Plaintiffs are Lieutenant John Pappas, Sergeant Randy Brenner, Sergeant Christopher Tabing,
Sergeant Marc Richardson, Sergeant Kristopher Jezsek, Sergeant Carmen Mateo, Sergeant
Brenda Graham, Sergeant Lisa Velez, Lieutenant Brian Corrigan, Sergeant Edwin Rodriguez,
and Sergeant Michael Goggins.

live in each respective Dog Handler's home. *Id.* ¶ 42. As a matter of policy, the City requires the Dog Handlers to train, exercise and feed their assigned dogs seven days a week, 365 days a year. *Id.* ¶ 43. The Dog Handlers' duties include teaching the dogs basic commands, obedience, walking, feeding, scent-work training, and exercising. *Id.* ¶ 44. Plaintiffs bathe, brush, exercise, feed, and groom the dogs, clean the dogs' kennels and transport vehicles, and engage in related activities at home on workdays as well as on days off and during vacation periods. *Id.* ¶ 7. Plaintiffs also take their assigned police dogs for veterinary care as necessary and are not compensated for emergency veterinary visits that occur during non-official work hours. *Id.* ¶ 46.

Plaintiffs allege that "virtually all other departments within New York City . . . and in New York State provide [Dog] Handlers with additional pay regardless of title." *Id.* ¶ 12. Those departments include the New York City Department of Corrections and the New York City Department of Environmental Protection as well as the Metro Transit Authority police and the polices departments of Nassau, Suffolk, Orange, Westchester, and Rockland counties. *Id.* ¶ 13. Indeed, the City previously provided a retired police Lieutenant with compensation for his handler-related responsibilities prior to his retirement. *Id.* ¶ 14.

On days when Dog Handlers are at work, Dog Handlers perform a minimum of approximately two hours of unpaid overtime work with respect to their assigned police dog. *Id.* ¶ 47. On days when Dog Handlers are not at work, Dog Handlers perform a minimum of approximately one and a half hours of unpaid overtime work with respect to their assigned police dogs. *Id.* ¶ 48.

The City is required to pay all police officers overtime if they work more than 171 hours in a 28-day cycle. *Id.* ¶¶ 37, 41. Plaintiffs allege, however, that Defendant failed to pay them the

appropriate overtime premiums for all hours worked in excess of 171 hours in a 28-day cycle. *Id.* ¶ 53.

## PROCEDURAL HISTORY

Plaintiffs initiated this case by complaint filed on July 13, 2023.  Dkt. No. 1.  They alleged that Defendant failed to pay them overtime wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*  *Id.* ¶¶ 1–54.  Plaintiffs also alleged that Defendant violated the NYLL by failing to provide them with accurate wage notices and wage statements and failing to pay them earned wages.  *Id.* ¶¶ 55–67.  Plaintiffs filed a First Amended Complaint on August 21, 2023, Dkt. No. 9, and, with the consent of Defendant and upon order of the Court, Dkt. Nos. 23, 25, filed a Second Amended Complaint on November 16, 2023, adding two Plaintiffs, seeking to bring the actions as a FLSA collective, and eliminating all claims under the NYLL, Dkt. No. 27.

On December 1, 2023, with the consent of Defendant and upon order of the Court, Dkt. Nos. 31–32, Plaintiffs filed the TAC, Dkt. No. 33, operative here.  The TAC alleges two causes of action: (1) the failure to pay overtime wages in violation of the FLSA, Dkt. No. 33 ¶¶ 51–56; and (2) the failure to pay minimum wages in violation of the FLSA, *id.* ¶¶ 57–62.  Plaintiffs seek to bring the action as a FLSA collective on behalf of themselves and "other similarly situated persons who are current and former sergeants and lieutenants and assigned a police dog by the City since the date three years prior to the filing of th[e] Complaint."  *Id.* ¶ 32.[2]

---

[2] Plaintiffs allege that there are approximately twenty-five similarly-situated current and former Lieutenants and Sergeants of NYPD who are potential members of the FLSA collective.  Dkt. No. 33 ¶ 33.

On December 15, 2023, Defendant filed this motion to dismiss the TAC or, in the alternative, to compel arbitration.  Dkt. No. 44.  The motion was accompanied by a declaration of counsel and a memorandum of law.  Dkt. Nos. 45–46.  On February 14, 2024, Plaintiffs filed a memorandum of law in opposition to the motion along with the Declaration of named Plaintiff John Pappas.  Dkt. Nos. 62, 63–64.  On February 21, 2024, Defendant filed a reply memorandum of law in further support of the motion.  Dkt. No. 65.[3]

The Court held oral argument on the motion to dismiss on March 27, 2024.  *See* 3/27/24 Minute Entry.  At argument, the Court requested supplemental briefing from the parties regarding arbitration of the claims.  Dkt. No. 75 at 34.  On April 25, 2024, after the parties submitted supplemental briefing, the Court held additional oral argument regarding the arbitrability of the claims brought by Sergeants.  *See* 4/25/24 Minute Entry.

## DISCUSSION

Defendant makes several arguments in support of its motion.  First, Defendant argues that the TAC must be dismissed with respect to the nine Sergeants who are Plaintiffs on the grounds that they are parties to arbitration provisions in collective bargaining agreements ("CBAs") that require arbitration of this dispute.  Dkt. No. 46 at 2, 10–13.  Second, Defendant argues that the TAC must be dismissed in its entirety because Plaintiffs fall within the FLSA exemption for persons employed in a bona fide executive, administrative or professional capacity.  *Id.* at 2, 13–15.  Third, Defendant argues that the FLSA claims asserted by Plaintiffs Velez and Corrigan must be dismissed as time-barred by FLSA's two-year statute of limitations and that such statute

---

[3] By Memorandum and Order of January 26, 2024, the Court granted Defendant's motion for a stay of discovery pending decision on the motion to dismiss.  Dkt. No. 58.  Plaintiffs have filed a motion for conditional certification of the FLSA collective.  Dkt. No. 36.  Defendant has agreed that the applicable statute of limitations period will be equitably tolled for members of the potential collective who have not yet filed an opt-in notice pending the Court's decision on the motion for conditional certification.  Dkt. No. 67.

of limitations limits the relief that can be accorded the other Plaintiffs. *Id.* at 2, 15–17. Finally, Defendant argues that the TAC should be dismissed because Plaintiffs do not plead sufficient factual allegations to state either an overtime or minimum wage claim pursuant to the FLSA. *Id.* at 3, 18–20. The Court addresses each *in seriatim*.

## I.     Request for a Court Order Compelling Arbitration of the Sergeant-Plaintiffs' Claims

Defendant moves to dismiss the suit as against the nine individually named plaintiffs who are Sergeants, contending that suit is barred by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*[4] Dkt. No. 46 at 10–13. Defendant argues that the Sergeant-Plaintiffs should be compelled to arbitrate pursuant to a binding arbitration provision in a memorandum of agreement, which modified and extended the term of the CBA after it expired, and which covers FLSA disputes by NYPD Sergeants. *Id.*

Although styled as a motion to dismiss, *see* Dkt. No. 44, the Court construes Defendant's motion as it relates to arbitration of the Sergeants' claims as a motion to compel arbitration. "The Second Circuit has recognized that, depending on the facts and arguments presented, a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration." *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 405 n.1 (S.D.N.Y. 2016) (citing *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139–40 (2d Cir. 2008)). "The motion must either 'explicitly or implicitly ask[] the court to order arbitration.'" *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 390 (S.D.N.Y. 2021) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)). "Where such a request is made and a movant thus manifests

---

[4] The Court begins with Defendant's request to compel arbitration, as "a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order).

'an intent . . . to compel arbitration,' the Court may 'treat[] motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration.'" *Id.* (quoting *Nicosia*, 834 F.3d at 230 & n.3). Here, Defendant expressly requests that the Court "compel arbitration of this matter." Dkt. No. 46 at 13. Accordingly, the Court treats Defendant's motion to dismiss insofar as it relates to arbitration as a motion to compel arbitration. *See, e.g.*, *Zachman v. Hudson Valley Fed. Cr. Union*, 49 F.4th 95, 100 n.3 (2d Cir. 2022).

Courts evaluate motions to compel arbitration pursuant to the FAA under a standard similar to that utilized for summary judgment motions. *Bensadoin v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Cornelius v. Wells Fargo Bank, N.A.*, 2020 WL 1809324, at *4 (S.D.N.Y. Apr. 8, 2020). As with a motion for summary judgment, the parties may submit documents in support or opposition of the motion, and the court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citation omitted).[5] "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 91 (2000); *see also Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010). It may not satisfy this burden through "general denials of the facts on which

---

[5] In other words, the Court may properly consider documents outside the pleadings, including the agreements containing the arbitration provision submitted by Defendant, when deciding a motion to compel arbitration. *See, e.g.*, *Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187, 192 n.2 (S.D.N.Y. 2018). "While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." *Purcell v. Navient Sols., LLC*, 2019 WL 188693, at *2 (S.D.N.Y. Jan. 14, 2019) (quoting *B.S. Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006)).

the right to arbitration depends"; rather, the party opposing arbitration "must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

Pursuant to the FAA, a written agreement to arbitrate disputes arising from a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (because arbitration agreements stand "on equal footing with other contracts," courts must "enforce them according to their terms"). When a contractual party "fail[s], neglect[s], or refus[es] . . . to arbitrate" under the terms of an arbitration agreement, another party may petition the court for an order compelling arbitration. 9 U.S.C. § 4; *see Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As a result, "[t]he Court's role on a motion to compel arbitration is 'narrow.'" *Lonstein L. Off., P.C. v. Evanston Ins. Co.*, 2022 WL 72302, at *8 (S.D.N.Y. Jan. 6, 2022) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3d Cir. 1998)); *see also Brevard v. Credit Suisse*, 2024 WL 36991, at *3 (S.D.N.Y. Jan. 3, 2024). A court ruling on a petition to compel arbitration must decide: (1) whether the parties agreed to arbitrate; (2) if so, whether the scope of that agreement encompasses the claims at issue; and (3) if some, but not all, claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. *Edwards v. CVS Health Corp.*, 2024 WL 208093, at *4 (S.D.N.Y. Jan. 25, 2024); *see Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008); *Chung v. 335 Madison Ave. LLC*, 2021 WL 4710483, at *2 (S.D.N.Y. Oct. 7, 2021). The parties dispute

both whether the agreements to arbitrate may be enforced, and, if so, whether the agreements include the claims at issue here.

A.       **Language of the Relevant Agreements**

The language of two agreements is relevant to the Court's analysis: the CBA between the City and the Sergeants' Benevolent Association, "the sole and exclusive bargaining representative for . . . employees of the [NYPD] in the role of sergeant," Dkt. No. 62-2, and the 2011–2018 Memorandum of Agreement ("2011–2018 MOA") that modifies but otherwise extends the terms of the CBA once the CBA expired on August 11, 2011, Dkt. No. 46-3 § 1. The 2011–2018 MOA between the City and the Sergeants' Benevolent Association ("SBA" or "Union"), dated February 24, 2015, ran from August 30, 2011 through August 29, 2018. *See id*. It was carried forward through December 9, 2021, by the 2018–2021 Sergeants' Benevolent Association Memorandum of Agreement. *See* Dkt. No. 46-4.

The 2011–2018 MOA recites that the parties "desire to enter into collective bargaining agreements," including the 2011–2018 MOA itself, "and agreements successor to the existing unit agreement expiring on August 29, 2011, to cover the employees represented by the Union" and that the terms of the 2011–2018 MOA were incorporated "into the Successor Unit Agreement." Dkt. No. 46-3. The 2011–2018 MOA contains, *inter alia*, provisions for a general wage increase, longevity payments, health savings and welfare fund contributions, and terminal leave lump sum payments. *Id.* §§ 4–8. It also contains a provision requiring alleged violations of FLSA to be pursued through a set grievance process and arbitrated. The provision, which is within a section entitled "Fair Labor Standard Act Issues" states, in pertinent part, as follows:

> Whereby, the parties intend to prevent potential future claims under the [FLSA], the parties hereby agree as follows:
>
> Right to Schedule Chart Time

. . .

Staggered Tours

. . .

(b)  Sergeants are not permitted to perform any work before their scheduled starting time or after their scheduled finishing time without the prior approval of a superior officer.

Off-Duty Work

Sergeants assigned to Detective Track Commands, as defined in Administrative Guide Procedures 320-35 and Operations Order No. 19 of 2011, shall receive a stipend of $705 per year as compensation for up to one and one-half (1.5) hours of work each week performed off-duty via phone, e-mail, text, or in any other manner.  The election of compensatory time is not available for off-duty work.

No sergeant assigned to Detective Track Commands shall spend more than one and one-half (1.5) hours per week on off-duty work without the prior approval of a superior officer.  In the event this limit is exceeded under circumstances that made it impossible to obtain prior approval (e.g., as a result of an emergency), the sergeant must so notify a superior officer within 24 hours thereafter.

No sergeant assigned to any non-Detective Track Command shall spend any time on off-duty work without the prior approval of a superior officer.  If a sergeant assigned to a non-Detective Track Command is contacted off-duty by a superior officer such approval is presumed.

Time spent receiving notifications will not qualify as off-duty work under this section.

Dkt. No. 46-3 § 13.  The 2011–2018 MOA further states:

All claims arising from the application of the matters described in paragraphs II(b) and III, above, alleging violations of the federal [FLSA] involving claims of off-duty work or pre or post-shift work, and all other claims involving the interpretation or application of these paragraphs, shall be subject to the Agreement's grievance and arbitration procedure as the final, binding, sole and exclusive remedy for such violations, and employees covered by this Agreement shall not file suit or seek relief in any other forum.

*Id.* § 13(V)(a).  The 2011–2018 MOA goes on to provide that "[t]he claims subject to resolution

in accordance with paragraph V(a), above, shall not be arbitrated by way of a group grievance,"

and that "[t]he arbitrator shall have no authority or jurisdiction to process, conduct, or rule upon any group grievances, or to consolidate any individual claims in one proceeding absent mutual consent of the parties hereto." *Id.* § 12(V)(c) & (d).

Article XX of the CBA sets forth the "Grievance and Arbitration Procedure," which proceeds in four steps. Dkt. No. 62-2 at 21–25. First, the grievant must present his or her grievance to their Commanding Officer for review and decision. *Id.* at 22. Second, if the grievance is not satisfactorily treated at step one, the grievant presents the grievance in writing to a Reviewing Officer—the superior officer in charge of the next higher command or level above a Commanding Officer. *Id.* at 21, 23. If the grievance is not satisfactorily treated at steps one or two, the grievant may then, at step three, present the grievance in the form of a report to the Personnel Grievance Board for review. *Id.* at 23. And at step four, if the grievance still is not satisfactorily resolved, the grievant may refer the grievance to the Police Commissioner for the Commissioner's determination. *Id.* After the four steps are completed and the Commissioner's decision has been received, both the SBA, as the Union representative, and the City have the right to bring any still unresolved grievances to impartial arbitration before five arbitrators drawn from the official panel of the City's Office of Collective Bargaining, as agreed to by both parties. *Id.* at 24.

The CBA provides the timeline for the grievance procedure as follows: "Under the grievance procedure herein a grievance must be initiated within 90 days following the date on which the grievance arose or the date on which the grievant should reasonably have learned of the grievance or the execution date of this Agreement, whichever date is the latest." *Id.* at 22. However, "[t]he time limits . . . may be modified by mutual agreement." *Id.* at 25.

The CBA defines "grievances" subject to the grievance procedure outline above to include (1) a claimed violation of the CBA; (2) a claimed violation of the rules, regulations, or procedures of the NYPD affecting terms and conditions of employment; (3) a claimed improper holding of an open-competitive rather than a promotional examination; and (4) a claimed assignment of the grievant to duties substantially different from those stated in the grievant' s job title specifications. *Id.* at 21.

## B.      Validity of Agreement to Arbitrate

Here, it is undisputed that the union agreements contain arbitration and grievance resolution procedures. *See* Dkt. No. 61 at 5–6.  However, as a threshold matter, the parties dispute whether those provisions are enforceable.  Plaintiffs argue that the agreement to arbitrate is unenforceable because (1) the grievance procedure outlined in the CBA shortens the statute of limitations; and (2) it allows the Union to block arbitration of an employee's claims.  Dkt. No. 61 at 23–26.  Neither argument has merit.

As to Plaintiffs' first argument, although it is true that parties to a contract may not shorten the applicable statute of limitations of the FLSA by contractual provision, the proper remedy is not to invalidate the agreement in its entirety.  *See, e.g.*, *Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 606–07 (S.D.N.Y. 2020).  Courts in this Circuit have found provisions that shorten the limitations period for FLSA claims to be unenforceable on grounds that preventing the "effective vindication of a federal statutory right" would "contravene a congressional command." *Castellanos v. Raymours Furniture Co., Inc.* 291 F. Supp. 3d 294, 299 (E.D.N.Y. 2018) (Bianco, J.) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013)); *see also Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 298 (2d Cir. 2013). Under the FLSA, "a new cause of action accrues with each payday following an allegedly unlawful pay period." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006).  By

limiting a grievant to claims that accrued only within the prior ninety days, the effect of the shortened limitation period thus is to limit the grievant's potential recovery under the FLSA and to "nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Castellanos*, 291 F. Supp. 3d at 301 (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)); *see also Hegazy v. The Halal Guys, Inc.*, 2023 WL 8924092, at *7 n.7 (S.D.N.Y. Dec. 27, 2023) (same; citing cases); *Crespo v. Kapnisis*, 2022 WL 2916033, at *6 (E.D.N.Y. July 25, 2022) ("[A]lthough the Second Circuit has yet to determine whether an arbitration provision that shortens the limitations period to bring claims under the FLSA is enforceable, federal courts have routinely disallowed arbitration provisions shortening the limitations period.").  But the limitations provision does not work to void the agreed-upon grievance procedure altogether.  Rather, "[w]here a court identifies a provision that precludes a plaintiff from pursuing his statutory rights, the proper remedy 'is to sever the improper provision of the arbitration agreement, rather than void the entire agreement.'" *Crespo*, 2022 WL 2916033, at *5 (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010)); *see also Castellanos*, 291 F. Supp. 3d at 301 (proper remedy for unenforceable limitations provision is to sever it); *Gilbert*, 513 F. Supp. 3d at 407 (rejecting argument that arbitration provision should not be enforced because defendant waived enforcement of the problematic provisions).  In any event, the City has represented in its supplemental briefing that it will not enforce the six-month limitation period against Plaintiffs and will instead apply a statute of limitations that "will mirror the federal statute of limitations period for commencing an FLSA action."  Dkt. No. 70 at 2.

Plaintiffs' second argument against the validity of the arbitration is no more successful. Plaintiffs assert that the section requiring arbitration, because it states that the grievance

procedure only permits the Union to proceed with arbitration and does not contain a provision allowing employees to proceed with arbitration without support from the Union, prevents employees from asserting their statutory rights.  Dkt. No. 61 at 24–25.  The Supreme Court has reserved judgment as to whether a CBA's waiver of a judicial forum is enforceable when a union blocks arbitration of an employee's statutory claims.  *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 272 (2009); *see also id.* at 285 (Souter, J., dissenting) (noting that the Court "explicitly reserves the question whether a CBA's waiver of a judicial forum is enforceable when the union controls access to and presentation of employees' claims in arbitration").  The majority of courts in this Circuit that have considered the question have held that when a union blocks arbitration of an employee's otherwise-arbitrable claims, a waiver of a judicial forum in a CBA is unenforceable and the employee may litigate his statutory claims.  *See, e.g.*, *Espada v. Guardian Serv. Indus., Inc.*, 2019 WL 5309963, at *4 (E.D.N.Y. Oct. 18, 2019) (union refused to bring claim for lack of cooperation); *Morris v. Temco Serv. Indus., Inc.*, 2010 WL 3291810, at *5 (E.D.N.Y. Aug. 12, 2010) (denying motion to compel where union prevented plaintiff from arbitrating discrimination claims); *Brown v. Servs. for the Underserved*, 2012 WL 3111903, at *2–3 (E.D.N.Y. July 31, 2012) ("Because the arbitration clause has effectively deprived [plaintiff] of any remedy for his statutory discrimination claims, it is invalid, and I decline to compel arbitration."); *Kravar v. Triangle Servs., Inc.*, 2009 WL 1392595, at *2 (S.D.N.Y. Oct. 18, 2009) ("[T]here is little question that if [the plaintiff's] union prevented her from arbitrating her disability discrimination claims, the CBA's arbitration provision may not be enforced as to her.  The Court finds that this in fact occurred.").  Where a CBA bars an employee's right to seek a judicial remedy and where the union also bars the member's rights to seek an arbitral remedy, the CBA has the effect of preventing the member from "effectively vindicating" his statutory

rights.  *Penn Plaza*, at 273–74; *see also Green Tree Fin. Corp.*, 531 U.S. at 90; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 & 637 n.19.  "[A]n agreement to extinguish a party's statutory civil rights is unenforceable; parties cannot overcome Congress's express intention . . . by private accord."  *Brown*, 2012 WL 3111903, at *2.

However, "the mere existence of a provision in a collective bargaining agreement that confers unfettered discretion on the union in deciding which claims to arbitrate—*without* any showing that the union*, in fact*, exercised that discretion to block arbitration of an employee's claims and left him without recourse—is [not] enough for the Court to find a substantive waiver" of the requirement to arbitrate.  *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 249–50 (E.D.N.Y. 2016); *see also Collazos v. Garda CL Atl., Inc.*, 666 F. Supp. 3d 249, 266 n.19 (E.D.N.Y. 2023); *Favors v. Triangle Servs., Inc.*, 207 F. Supp. 3d 197, 202–03 (E.D.N.Y. 2016); *Begonja*, 159 F. Supp. 3d at 411.  Courts "have found [CBAs] unenforceable only where the submission of a statutory claim to arbitration is exclusively within the province of the union *and* the union has, *in fact*, declined to pursue the matter."  *Alfonso*, 203 F. Supp. 3d at 250.  A requirement that the employee first demand that the union arbitrate on his behalf before bringing an individual claim does not frustrate the effective vindication of a federal right.  "[F]or there to be a waiver of statutory rights, the *right* to pursue statutory claims must be blocked.  It is not enough that the process of bringing such claims in arbitration would be prohibitively expensive or otherwise impracticable."  *Begonja*, 159 F. Supp. 3d at 410; *see also Veliz v. Collins Bldg. Servs., Inc.*, 2011 WL 4444498, at *4 (S.D.N.Y. Sept. 26, 2011).  Here, Plaintiffs admit that they did not follow the steps outlined in the grievance procedure or seek representation in arbitration from the SBA.  Without having been precluded from arbitration by the Union, Plaintiffs may not complain that they have been denied a judicial forum or that their statutory rights have been

14

infringed by the procedure providing for union-initiated arbitration.  Requiring employees to

follow the grievance procedure outlined in the CBA respects the collective bargaining process

and honors the agreement that the Union has negotiated on behalf of all of its employees.  *Penn*

*Plaza*, 556 U.S. at 255–56.  It is not sufficient that the employee fear that the union will not bring

a claim.  Arbitration agreements may "not be invalidated 'on the basis of speculation.'"  *Alfonso*,

203 F. Supp. 3d at 250 (quoting *Penn Plaza*, 556 U.S. at 274).

### C.      Clear and Unmistakable Waiver

Having found that the Sergeants entered into a valid agreement to submit grievances to

arbitration, the Court next turns to whether the scope of the agreements encompasses the claims

at issue here, as "a court may order arbitration of a particular dispute only where the court is

satisfied that the parties agreed to arbitrate that dispute."  *Cooper v. Ruane Cunniff & Goldfarb*

*Inc.*, 990 F.3d 173, 179 (2d Cir. 2021); *see also Holick v. Cellular Sales of N.Y. LLC*, 802 F.3d

391, 395 (2d Cir. 2015) ("[A] party cannot be required to submit to arbitration any dispute which

it has not agreed so to submit.").

The Supreme Court has interpreted the FAA as establishing "a liberal federal policy

favoring arbitration agreements," and thus "any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24–25 (1983),[6] and held that a union may commit an employee's wage claims

brought under the FLSA to resolution by arbitration under the FAA, *see, e.g.*, *Epic Sys. Corp. v.*

*Lewis*, 584 U.S. 497 (2018); *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir.

2016).  "The presumption in favor of arbitrability does not, however, extend to waivers of

---

[6] However, the Second Circuit has clarified that "the presumption of arbitrability is a court's last,
rather than first, resort."  *Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power
Corp.*, 67 F.4th 107, 114 (2d Cir. 2023) (per curiam); *see also Galanova v. Morgan Stanley
Servs. Grp Inc.*, 2023 WL 6198823, at *4 (S.D.N.Y. Sept. 22, 2023).

statutory causes of action contained in collective bargaining agreements." *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 365 (S.D.N.Y. 2022), *aff'd*, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (summary order) (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 1998)). While, with respect to the scope of an arbitration agreement, the court "normally resolve[s] 'any doubts . . . in favor of arbitration,' . . . an exception to the scope presumption applies in the context of a union's waiver of its members' right to bring statutory claims in court." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). "[S]uch waivers of union members' right to bring claims in court 'must be clear and unmistakable.'" *Id.* (quoting *Lawrence*, 841 F.3d at 82). Accordingly, once the court has established that an agreement exists, it asks whether "that agreement clearly and unmistakably encompasses the plaintiff's statutory claims." *Id.* at 223; *see also Wright*, 525 U.S. at 78–79 (requiring that a mandatory arbitration provision in a CBA "be particularly clear"). "As a general matter, such a clear and unmistakable waiver will be found when one of two circumstances is present: '(1) the arbitration clause contains a provision that explicitly provides that all causes of action arising out of the employee's employment shall be submitted to arbitration; or (2) the arbitration clause specifically references or incorporates the relevant statutes into the agreement to arbitrate.'" *Acevedo v. Harvard Maint. Co.*, 2021 WL 1224898, at *7 (S.D.N.Y. Mar. 31, 2021) (Nathan, J.) (quoting *Cox v. Perfect Bldg. Maint. Corp.*, 2017 WL 3049547, at *4 (S.D.N.Y. July 18, 2017)); *see also Lawrence*, 841 F.3d at 84 (explaining that the "clear and unmistakable" standard "require[s] specific references in the CBA either to the statutes in question or to statutory causes of action generally"); *Fernandez v. Pinnacle Grp. NY LLC*, 2023 WL 2525996, at *5 (S.D.N.Y. Mar. 15, 2023). This exacting standard "ensures that employees' right to bring statutory claims in court is not waived by

operation of confusing, 'very general' arbitration clauses." *Abdullayeva*, 928 F.3d at 223 (quoting *Wright*, 525 U.S. at 80).

Defendant, however, has not shown that there is a "clear and unmistakable waiver" of Plaintiffs' rights to bring their FLSA claims in federal court.  The language of the 2011–2018 MOA is ambiguous and does not clearly apply here.  Section 13 of the 2011–2018 MOA does not subject all FLSA claims of Sergeants to the grievance and arbitration procedures outlined in the CBA.  The first sentence of Section 13(V)(a) provides that "[a]ll claims *arising from the application of the matters described in paragraphs II(b) and III*, above, alleging violations of the [FLSA] involving claims of off-duty work or pre or post-shift work, and all other claims involving the interpretation and application of these paragraphs, shall be subject to the Agreement's grievance and arbitration procedure."  Dkt. No. 46-3 § 13(V)(a) (emphasis added). As Defendant admitted at argument, the clause stating that "claims arising from the application of the matters described in paragraphs II(b) and III" are words of limitation.  Oral Arg. Tr. at 3. In short, Section 13(V)(a) does not subject *all* complaints of FLSA violations "involving claims of off-duty work or pre- or post-shift work" to mandatory grievance and arbitration; rather the provision limits arbitration to only some claims, *i.e.*, those "arising from the application of the matters described in paragraphs II(b) and III."  *Id.* § 13.

The language of Section 13 thus raises the question of which claims alleging FLSA violations involving off-duty work or pre- or post-shift work arise "from the application of  the matters described in paragraphs II(b) and III."  *Id.* § 13(V)(a).  But those paragraphs, by their terms, however, do not clearly describe "matters."  They contain rules.  Paragraph II(b) prohibits Sergeants from performing "any work before their scheduled starting time or after their scheduled finishing time without the prior approval of a superior officer."  *Id.* § 13(II)(b).  It does

not appear to be applicable here where there is no allegation that the Plaintiffs were working

staggered terms.  Paragraph III(c), the provision both sides appear to agree is relevant here,

prohibits a Sergeant assigned to a non-Detective Track Command as defined in NYPD's

administrative guidelines from spending "any time on off-duty work without the prior approval

of a superior officer."  *Id.* § 13(III)(c).

Plaintiffs argue that the matter "described" in paragraph III(c) refers to off-duty work

performed by Sergeants on a non-Detective Track Command that would ordinarily require the

approval of a superior officer, which, Plaintiffs contend, does not include the off-duty work at

issue in this case.  They point, as examples, to circumstances where the overtime work is

episodic or unexpected, such as where a Sergeant is asked to work late to prepare a report or to

otherwise complete work tasks.  Oral Arg. Tr. at 15.  By contrast, Plaintiffs argue that the work

they performed—caring for police dogs—is not a matter subject to paragraph III(c) because it is

performed as an ordinary and regular part of their job responsibilities.  As such, the work is not

work for which they were required to obtain approval of a superior, and therefore not covered by

paragraph III(c).  Because their work is not covered by paragraph III(c), it is not subject to the

CBA's mandatory grievance and arbitration provisions by paragraph V(a).

Defendant offers no convincing response in the numerous submissions it has made in this

case.  Defendant argues that paragraphs II(b) and III cover all off-duty work and pre- and post-

shift work performed by Sergeants, regardless of whether that work is approved by a superior

officer or is of the type that would be required to be approved by a superior officer.  But that

interpretation would cover all FLSA claims regarding "off-duty work or pre or post-shift work"

and thus would read out of the agreement the language that limits the mandatory arbitration

provision to those claims that "aris[e] from the application of the matters described in paragraphs

18

II(b) and III," in violation of the cardinal rule that contracts must be read so as to avoid rendering any language surplusage.  *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005); *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 740 N.E.2d 220 (N.Y. 2000); *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2022 WL 2757643, at *11 (S.D.N.Y. July 14, 2022).

Defendant also points to the second clause of the first sentence of paragraph V(a), which provides that "all other claims involving the interpretation or application of these paragraphs" are subject to the "Agreement's grievance and arbitration procedure."  Dkt. No. 46-3 § 13(V)(a). But that language is most naturally read to subject non-FLSA claims arising out of paragraphs II(b) and III to mandatory arbitration.  It cannot be read to eliminate the qualifier in the first sentence that limits the FLSA claims subject to mandatory arbitration to ones "arising from the application of the matters described in paragraphs II(b) and III."  *Cf. Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110 (2d Cir. 2014); *Glickman v. First Unum Life Ins. Co.*, 676 F. Supp. 3d 357 (S.D.N.Y. 2023).

Further, Defendant has not explained how the claims asserted in this lawsuit involve the interpretation of paragraphs II(b) or III or the application of the rules set forth in those paragraphs.

Finally, Defendant points to the last sentence of paragraph V(a) which states: "The parties will take all steps necessary to ensure that claims within the scope of this paragraph are resolved pursuant to and in accordance with the grievance and arbitration provision of the collective bargaining agreement."  Dkt. No. 46-3 § 13(V)(a).  But that provision does not do the work Defendant would require of it.  The sentence, by its terms, is limits to the "claims within the scope of this paragraph."  Dkt. No. 46-3 § 13(V)(a).  If Plaintiffs' claims are not within the

scope of paragraph V(a), as that scope is set forth in the first sentence of that paragraph, they cannot be brought within the scope of the paragraph by the last sentence, which merely references the first sentence.  *Cf. Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2022 WL 413229, at 8–9 (S.D.N.Y. Feb. 9, 2022).  The last sentence of the provision is naturally read to require of each party that they take the steps necessary to comply with the mandatory grievance and arbitration provisions of the CBA, not to expand the nature and number of claims subject to those provisions.

In general, the language of the arbitration provision here is far from the sweeping language that other courts in this Circuit have found sufficient to mandate arbitration.  *See, e.g.*, *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 541 (S.D.N.Y. 2016); *Alfonso*, 203 F. Supp. 3d at 247; *Duraku v. Tishman Speyer Props., Inc*., 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 303 (S.D.N.Y. 2010) (compelling arbitration of FLSA claims where mandatory arbitration provision applied to "any common law or equitable basis of action pertaining to . . . employment" and that the "[a]rbitrator is authorized to resolve all federal and state statutory claims"); *Collazos*, 666 F. Supp. 3d at 265–66 (compelling arbitration of state overtime claims where CBA language required arbitration of any "grievance," defined as an unsatisfactory response to "pay, entitlement to compensation, benefits, hours, or working conditions set forth herein, including without limitation, . . . any claim under any federal, state or local law, statute or regulation or under any common law theory whether residing in contract, tort or equity or any other claim related to or part of the employment relationship"); *cf. Johnson v. Tishman Speyer Props., LLC*, 2009 WL 3364038, at *2–4 (S.D.N.Y. Oct. 16, 2009) (compelling arbitration of discrimination claims where CBA provided "that employment discrimination claims made pursuant to [federal, state, and local law]

[were] subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations").  Although such sweeping language might not be necessary in every case, Defendant has failed here to show that the language of the 2011–2018 MOA is sufficiently clear to require arbitration.

In the absence of any showing by Defendant that there is clear and unmistakable language in the 2011–2018 MOA addressing Plaintiffs' claims, Defendant is not entitled to an order subjecting Plaintiff to mandatory arbitration.[7]

## II.    Motion to Dismiss

Defendant requests that the Court dismiss the action for three reasons: (1) that all Plaintiffs, by virtue of being Lieutenants and Sergeants, are exempt from FLSA's protections as *bona fide* executives; (2) that the claims of two of the named Plaintiffs are time-barred; and (3) that the TAC fails to state a claim under the FLSA.  *See* Dkt. No. 46.

In considering a motion to dismiss pursuant to Rule 12(b)(6), a "court must accept the material facts as alleged in the complaint as true and construe all reasonable inferences in the

---

[7] For purposes of completeness, the Court notes that Plaintiffs' argument that Defendant has waived its right to arbitrate because of the work that has transpired in this case is without merit. A party relinquishes the right to arbitrate when it acts "inconsistently with that right."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022); *see Billie v. Coverall N. Am. Inc.*, 2023 WL 2531396, at * n.3 (2d Cir. Mar. 15, 2023) (summary order); *Brown v. Peregrine Enters., Inc.*, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (summary order).  Plaintiffs focus on the fact that the City did not invoke its right to arbitration at any time after Plaintiffs filed a notice of claim against the City in March 2023 until some Plaintiffs had already been deposed, and Plaintiffs had moved for conditional certification of a class, and Plaintiffs had served document demands and requests for admission.  Dkt. No. 61 at 9–10.  But this does not show that Defendant resisted arbitration or expressed a preference for litigation before the suit was initiated, or knowingly abandoned that right.  When the suit was filed, Defendant raised its arguments regarding arbitration in its first dispositive motion.  *See, e.g., Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 32 (E.D.N.Y. 2023) (declining to find waiver where "[t]here has not been a substantial amount of merits-based litigation such as dispositive or merits-based motion practice, nor was, or is trial imminent").  "This is not a case where a [party] initiated litigation, took extensive discovery, and then requested arbitration only after litigation started looking unfavorable."  *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 616 (S.D.N.Y. 2020).

plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994)).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

A.      **Bona Fide Executive Exemption**

Defendant argues that all of the Plaintiffs, including both NYPD Lieutenants and Sergeants, are exempt from FLSA's overtime requirements as persons employed in a bona fide executive, administrative or professional capacity.  Dkt. No. 46 at 13–15.  Defendant argues specifically that, by virtue of their supervisory responsibilities, Plaintiffs are executives and thus exempt from FLSA's protections.

Pursuant to FLSA, "employees who are employed in a bona fide executive, administrative or professional capacity" are not covered by the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1); *see Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 160 (2d Cir. 2008).

FLSA exemptions are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)); *see Karropoulous v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 527 (E.D.N.Y. 2015).  The availability of a FLSA exemption is an affirmative defense that must be proven by the employer.  *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) ("[A]n employer bears the burden of proving that its employees fall within an exempted category."); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991), *cert. denied*, 506 U.S. 905 (1992) (same); *Hong v. Mommy's Jamaican Mkt. Corp.*, 2023 WL 6122904, at *2 (S.D.N.Y. Sept. 19, 2023).  Plaintiffs are not required to plead facts to show that they are not exempt from FLSA's overtime protections.  *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013), *cert. denied*, 571 U.S. 1128 (2014); *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).  "Whether an exemption applies to a particular employee 'is a mixed question of law and fact'" that depends upon 'the [employee's] actual job characteristics and duties' and requires consideration of 'all the facts in a particular case.'"  *Ozawa v. Orsini Design Assocs., Inc.*, 2015 WL 1055902, at *3 (S.D.N.Y. Mar. 11, 2015) (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 548 (2d Cir. 2010), *cert. denied*, 565 U.S. 930 (2011)).  The availability of the defense turns on both the employee's pay structure and the "actual job characteristics and duties."  *Myers*, 624 F.3d at 548.  Thus, "[w]hether an employee is exempt from the overtime pay provisions is a fact intensive inquiry."  *Ozawa*, 2015 WL 1055902, at *3 (quoting *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 703 (S.D.N.Y. 2005)).

Under Department of Labor regulations, an employee is employed in a "bona fide executive capacity" if the employee is: (1) compensated on a salary basis at a rate of not less than $684 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100; *see also Mullins v. City of New York*, 653 F.3d 104, 107 (2d Cir. 2011), *cert. denied*, 565 U.S. 1275 (2012).  Defendant relies on Plaintiffs' pleading that they are Lieutenants and Sergeants, as well as their corresponding job definitions contained in Notices of Examination from 2022, in support of its argument.  *See* Dkt. No. 46-1; Dkt. No. 46-2.  However, pursuant to 29 C.F.R. § 541.2, "[a] job title is not determinative of whether an employee is exempt under the FLSA."  *Pippins v. KPMG LLP*, 921 F. Supp. 2d 26, 42 (S.D.N.Y. 2012); *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 533 (S.D.N.Y. 2012); *Ozawa*, 2015 WL 1055902 at *3.  Besides their responsibilities as Dog Handlers, which alone would not qualify them as exempt, Plaintiffs plead none of their responsibilities as Lieutenants and Sergeants.  And, as to the job definitions, the Court may grant Defendant's motion to dismiss on the basis of an affirmative defense only if that affirmative defense "appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999).  The Notices of Examination are not cognizable on the motion to dismiss. They are neither incorporated by reference nor are they documents of which the Court may take judicial notice.  *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382–83

(S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order).  Without consideration of the Notices of Examination, Defendant has little to bolster its argument.

Tellingly, the principal cases upon which Defendant relies, *Abramo v. City of New York*, 54 F. App'x 708, 709 (2d Cir. 2003) (summary order), and *Kelly v. City of Mount Vernon*, 162 F.3d 765, 770 (2d Cir. 1998), both involve whether the defendant proved the availability of the affirmative defense at summary judgment.  Accordingly, the motion to dismiss on the grounds that Plaintiffs are exempt from FLSA's protections as *bona fide* executives is denied.  *See, e.g.*, *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 402 (S.D.N.Y. 2010).

### B.  Timeliness

Defendant also seeks to dismiss the claims of two individual Plaintiffs on the grounds that their claims are untimely.  Specifically, Defendant contends that the claims of Lieutenant Corrigan and Sergeant Velez must be dismissed as time-barred by FLSA's two-year statute of limitations.  Dkt. No. 46 at 15–18.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021), *aff'd*, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (summary order) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

An action for a FLSA violation "may be commenced within two years after the cause of action accrued," and "every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful

violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "In determining when an action is commenced for the purposes of section 255 of this title . . . in the case of a collective or class action instituted under the [FLSA], as amended, . . . it shall be considered to be commenced in the case of any individual claimant (a) on the date when the complaint is filed, if he is specially named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his named did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced."  *Id.* § 256; *see Huer Huang v. Shanghai City Corp.*, 2020 WL 5849099, at *12 (S.D.N.Y. Oct. 19, 2020).

Sergeant Velez's FLSA claims are time-barred.  The TAC alleges that Sergeant Velez was employed by the NYPD as a Dog Handler from January 23, 2013 through May 28, 2020.  Dkt. No. 33 ¶ 26.  As noted above, a cause of action for unpaid and overtime wages under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated.  *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005).  Accordingly, assuming Sergeant Velez could allege a willful violation, the latest date that she could have filed a FLSA claim was three years from the regular payday immediately following her uncompensated workweek, in late May or early June 2023.  However, the complaint naming Sergeant Velez as a Plaintiff was not filed until July 13, 2023.  *See* Dkt. No. 1.  Accordingly, the statute of limitations applies and her claims must be dismissed as time-barred.

The timeliness of any part of Lieutenant Corrigan's claim depends on whether he has adequately alleged a willful violation.  Plaintiffs allege that Lieutenant Corrigan was employed

by the NYPD as a Dog Handler from October 7, 2017 through August 25, 2020.  Dkt. No. 33

¶ 27.  Lieutenant Corrigan was added as a Plaintiff in the Amended Complaint, filed on August

21, 2023.  Assuming he has adequately alleged willfulness, he would have a FLSA claim for the

period August 21, 2020 to August 25, 2020.  The Second Circuit has held that in order for a

plaintiff to take advantage of the three-year statute of limitations, he "must allege facts that

permit a plausible inference that the defendant willfully violated the FLSA."  *Whiteside*, 995

F.3d at 323.  "[T]he mere allegations of willfulness is insufficient to allow an FLSA plaintiff to

obtain the benefit of the three-year exception at the pleadings stage."  *Id.*  "Whether an employer

knows that an employee is or is not being paid for certain work is highly relevant to the

*willfulness* of a violation."  *Perry v. City of New York*, 78 F.4th 502, 515 n.13 (2d Cir. 2023)

(emphasis added).

"An employer willfully violates the FLSA when it 'either knew of or showed reckless

disregard for the matter of whether its conduct was prohibited by the Act.'"  *Young v. Cooper*

*Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richard Shoe Co.*,

486 U.S. 128, 133 (1988)).  "Mere negligence is insufficient;" if "an employer acts

unreasonably, but not recklessly, in determining its legal obligation," its actions are not willful.

*Whiteside*, 995 F.3d at 324 (citations omitted); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366

(2d Cir. 2011).  Reckless disregard, in this context, "involves actual knowledge of a legal

requirement, and deliberate disregard of the risk that one is in violation."  *Hart v. Rick's Cabaret*

*Int'l, Inc.*, 967 F. Supp. 2d 901, 937–38 (S.D.N.Y. 2013); *Montoya v. Havana Cent. NY 2, LLC*,

2024 WL 874640, at *5 (S.D.N.Y. Jan. 8, 2024).  "[T]he mere allegation of willfulness is

insufficient to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the

pleadings stage."  *Whiteside*, 995 F.3d at 323,  "Rather, a plaintiff must allege facts that permit a

plausible inference that the defendant willfully violated the FLSA." *Id.*  The burden is on the employee to show willfulness.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999).

Although Plaintiffs' conclusory allegations that Defendant's violations of the FLSA were "willful" are on their own insufficient to adequately plead willfulness, *see, e.g.*, *Van Duser v. Tozzer Ltd.*, 2024 WL 1833042, at *2 (S.D.N.Y. Apr. 26, 2024), Plaintiffs have sufficiently alleged facts that permit a plausible inference that Defendant willfully violated the FLSA. Plaintiffs allege that the City has "previously provided a retired police lieutenant with handler compensation prior to his retirement," indicating that the City was on notice of its obligations to pay Dog Handlers.  Dkt. No. 33 ¶ 14.  Plaintiffs further allege that other City agencies, including the New York City Department of Corrections and the Department of Environmental Protection, pay Dog Handlers for their work.  Dkt. No. 33 ¶ 13.  The Court may consider the Dog Handler pay practices of City departments to support Plaintiffs' claim of willfulness.  *Cf. Malcolm v. City of New York*, 2023 WL 4298869, at *3 (S.D.N.Y. June 30, 2023).  Accordingly, the Court finds that Plaintiffs' have adequately alleged willfulness, and that Lieutenant Corrigan's claim is therefore timely.

### C.    Sufficiency of the TAC

Lastly, Defendant argues that Plaintiffs have not pleaded facts to establish that they worked uncompensated overtime or were not paid a minimum wage.

As a general matter, FLSA requires employers to provide overtime compensation for any work beyond forty hours in a single workweek.  29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.103. Overtime must be paid at "a rate not less than one and one-half times the regular rate at which [the worker] is employed."  29 C.F.R. § 778.107.  "However, FLSA provides an exception for public law enforcement employees, allowing overtime to commence after 171 hours of work in a

twenty-eight day work period or 'tour of duty.'" *Scott v. City of New York*, 592 F. Supp. 2d 386, 400 (S.D.N.Y. 2008); *see Scott v. City of New York*, 604 F. Supp. 2d 602, 604 (S.D.N.Y. 2009) ("Police officers are entitled to overtime compensation for hours worked beyond 171 in a 28-day work period." (citing 29 U.S.C. § 207(k)(1)(B), 29 C.F.R. § 553.201)).  Where a police officer performs dog care work after completing 171 hours in a 28-day work period, the officer is entitled to receive compensation for that dog care time at the time and one-half rate required by FLSA.  *Scott v. City of New York*, 629 F. Supp. 2d 266, 271 (S.D.N.Y. 2009).[8]

FLSA's "overtime provisions apply to work performed off premises, outside of the employer's view and sometimes at odd hours, where an employer's concurrent knowledge of an employee's labor is not the norm."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008).  But still, "an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."  *Id.*; *see Kuebel*, 643 F.3d at 361 ("To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of the work.");  *Ladino v. Cordova*, 2023 WL 2915402, at *5 (E.D.N.Y. Apr. 12, 2023).

Outside of the law enforcement context, the Second Circuit has held that "[i]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2016).  In other words, "[t]o plead a

---

[8] It is not disputed on this motion that a police officer's dog care duties constitute employment that is not "preliminary to or postliminary to" the "principal activity or activities" which the officer is engaged to perform.  *Truslow v. Spotsylvania Cnty. Sheriff*, 783 F. Supp. 274, 279 (E.D. Va. 1992); *Nicholas v. City of Chicago*, 789 F. Supp. 1438 (N.D. Ill. 1992).

plausible FLSA overtime claim, the plaintiff must provide sufficient detail about the length and frequency of his unpaid work to support a reasonable inference that he worked more than forty hours in a given week." *Butt v. HF Mgmt. Servs., LLC*, 2020 WL 207393, at *2 (E.D.N.Y. Jan. 14, 2020). Although Plaintiffs are not required to "plead their hours with mathematical precision," they must provide complaints with "sufficiently detailed factual allegations." *Dejesus*, 726 F.3d at 90; *Romero v. Metro. Transp. Auth.*, 444 F. Supp. 3d 583, 587 (S.D.N.Y. 2020). "Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023) (quoting *Lundy*, 711 F.3d at 114). However, a plaintiff must allege more than "that at some undefined period in their employment they worked more than forty hours in a single week." *Id.* at 117.

There is no reason that the same principles would not be applicable in the public law enforcement context. Accordingly, to plead a FLSA overtime compensation claim, a law enforcement employee must plead facts, and not just conclusions, that he worked more than 171 hours in a twenty-eight day work period without being paid at an overtime rate for the hours in excess of 171.

Plaintiffs have not pleaded facts establishing that any of them worked in excess of 171 hours in a 28-day work period. Plaintiffs allege "[u]pon information and belief, for the work described above, on days when Handlers are at work, Handlers perform a minimum of approximately two hours of unpaid overtime work with respect to their assigned police dog." Dkt. No. 33 ¶ 47. Plaintiffs also allege "[u]pon information and belief, for the work described above, on days when Handlers are not at work, Handlers perform a minimum of approximately one and a half hours of unpaid overtime work with respect to their assigned police dogs." *Id.*

¶ 48.  But these allegations are insufficient to state a claim for FLSA overtime violations.  *See, e.g.*, *Dejesus*, 726 F.3d at 89; *Romero*, 444 F. Supp. 3d at 587.  "A litigant cannot merely plop upon information and belief in front of a conclusory allegation and thereby render it non-conclusory."  *Moreira v. Société Générale, S.A.*, 2023 WL 359446, at *2 (S.D.N.Y. Jan. 23, 2023) (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)); *see also Blanco v. Success Acad. Charter Schs., Inc.*, 2024 WL 965001, at *13 (S.D.N.Y. Mar. 6, 2024). In general, a litigant may plead facts upon information and belief only "where the facts are peculiarly within the possession and control of the defendant," or "where the belief is based on factual information that makes the inference of culpability plausible."  *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  "Where neither condition is fulfilled, the allegation is no more than 'pure speculation.'"  *Moreira*, 2023 WL 359446, at *2 (quoting *Singa v. Corizon Health, Inc.*, 2018 WL 324884, at *4 (E.D.N.Y. Jan. 8, 2018)).

Plaintiffs cannot base their information and belief allegation on the assertion that information regarding the number of hours they worked were peculiarly within the possession of their employer, the NYPD.  By the very nature of Plaintiffs' allegations—that they were working uncompensated hours at home—the information would be peculiarly within the possession of the Plaintiffs.  Plaintiffs also cannot rely upon a presumption that because they were handling police dogs, it is plausible that they were working more than 171 hours in a 28-day work period. Tellingly, none of the Plaintiffs allege the hours that they were on tour and not at home handling the police dogs.  Thus while Plaintiffs' allegations "raise the possibility that Plaintiffs were undercompensated in violation of the FLSA, "absent any allegation that Plaintiffs were scheduled to work [more than 171 hours in a 28-day period], these allegations do not state a

plausible claim for such relief." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

## III.    Leave to Replead

Motions to amend are governed by Fed. R. Civ. P. 15, which provides that "leave to amend a pleading should be freely granted 'when justice so requires.'" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 285 (S.D.N.Y. 2011). Under this standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.  *Id.*; *Oliver v. Rio Acquisition Partners, LLC*, 2019 WL 801952, at *4 (S.D.N.Y. Feb. 21, 2019).  Amendment is "futile" if the proposed claim could not withstand a motion to dismiss.  *F5 Cap. v. Pappas*, 856 F.3d 61, 89 (2d Cir.), *cert. denied*, 583 U.S. 997 (2017); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  On this liberal standard, amendment only as to Sergeant Velez's claims, which are time-barred, would be futile.  *See, e.g.*, *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 634 (S.D.N.Y. 2014).  The remaining claims may state a claim if they are made in greater detail with attention to the pleading requirements. Accordingly, Plaintiffs, with the exception of Sergeant Velez, are granted leave to amend the TAC to remedy the deficiencies identified in this opinion.

## CONCLUSION

For the foregoing reasons, the motion to compel the Sergeant-Plaintiffs to arbitration, as the Court construed it, is DENIED.  Defendant's motion to dismiss the TAC for failure to state a claim is GRANTED without prejudice to amendment by Plaintiffs within thirty days of the date

of this Opinion and Order, with the exception of Defendant's motion to dismiss Sergeant Velez's

claims as time-barred, which is GRANTED with prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 44.

SO ORDERED.

Dated: May 9, 2024
     New York, New York                           LEWIS J. LIMAN
                                        United States District Judge