UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN PAPPAS, RANDY BRENNER,
CHRISTOPHER TABING, MARC RICHARDSON,
KRISTOPHER JEZSEK, CARMEN MATEO,
BRENDA GRAHAM, BRIAN CORRIGAN,
EDWIN RODRIGUEZ, MICHAEL GOGGINS
and JAIME SITKO,

                             Plaintiffs,

- against -

THE CITY OF NEW YORK,

                             Defendant.

23-cv-06010 (LJL)

FOURTH AMENDED COMPLAINT

---

Plaintiffs Lieutenant John Pappas ("Lieutenant Pappas"), Sergeant Randy Brenner ("Sergeant Brenner"), Sergeant Christopher Tabing ("Sergeant Tabing"), Sergeant Marc Richardson ("Sergeant Richardson"), Sergeant Kristopher Jezsek ("Sergeant Jezsek"), Sergeant Carmen Mateo ("Sergeant Mateo"), Sergeant Brenda Graham ("Sergeant Graham"), Sergeant Lisa Velez ("Sergeant Velez"), Lieutenant Brian Corrigan ("Lieutenant Corrigan"), Sergeant Edwin Rodriguez ("Sergeant Rodriguez"), Sergeant Michael Goggins ("Sergeant Goggins") and Jaime Sitko ("Sergeant Sitko") (collectively "Plaintiffs" or "Handlers") complaining of The City of New York ("Defendant"), allege as follows:

## NATURE OF THE ACTION

1. This is a civil action brought by Plaintiffs and other similarly situated Handlers to recover unpaid overtime under the Fair Labor Standards Act ("FLSA").

2. This is also a civil action for the failure of Defendant to pay Plaintiff the correct regular rate.

3. Plaintiffs are or were either Lieutenants or Sergeants for the New York City Transit Police,who have worked for or are currently employed by Defendant and are assigned a police dog that is owned by Defendant.

4. Plaintiffs are considered dog handlers ("Handlers") by Defendant.

**Applicable Law**

5. The Supreme Court has described regular rate as the hourly rate actually paid the employee for the normal, non-overtime workweek for which they are employed.

6. Under the FLSA, overtime must amount to a rate not less than one and one half times the regular rate at which [the worker] is employed.

7. Police officers are entitled to overtime compensation for hours worked beyond 171 hours in a 28-day work cycle.

8. The "regular rate" is deemed to include all remuneration for employment paid to, or on behalf of, the employee," with certain exemptions.

9. Thus in most cases "[t]he regular rate by its very nature must reflect all payments by which the parties have agreed shall be received regularly during the workd [period], exclusive of overtime payments." *Bay Ridge Operation Co. v. Aaron*, 334 U.S. 446 (1948).

10. The regular rate reflects compensation for the "regular, non-[e]overtime work [] [period]." 29 C.F.R. 778.108.

11. "Time spent caring for police dogs is outside of an officer's regular duty chart, but that does not place it outside of the regular rate calculation." *Scott v. City of New York*, 604 F. Supp.2d 602, 604 (S.D.N.Y. Feb. 27, 2009).

12. Any remuneration received for non-overtime employment is presumptively included in the regular rate.

13. The FLSA does not permit differential treatment among categories of non-overtime work, absent an express agreement.

14. So long as dog care hours constitute time worked below an officer's 171-hour statutory overtime threshold, there is no reason to distinguish those hours from an officer's patrol hours.

15. Therefore, non-overtime dog care must be included in regular rate calculations.

16. The FLSA defines the term "employ" to mean "suffer or permit to work." Employees must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer or his business." *Tennessee Coal, Iron & Railroad CO. v. Miscoda Local No. 123*, 321 U.S. 590 (1944), 29 CFR § 785.7.

17. The term "care" means bathing, brushing, exercising, feeding, grooming, related cleaning of the dog's kennel or transport vehicle, and similar activities performed by the Handlers at home on workdays as well as on days off or during vacation periods. (Opinion Letter Fair Labor Standards Act ("FLSA"), 1993 WL 901171 (the "Letter"). A copy of this letter is annexed as Exhibit A.

18. The Letter does not distinguish between the Handler-Employees, nor state that only certain ranks, civil service titles or classes (collectively "Ranks") of police officers are entitled to receive this additional pay (i.e., supervisor, lieutenant, sergeant, detective, etc.).

19. The training and "care" of a police dog at home by a Handler is considered a part of the Handler's principal activities and not preliminary or postliminary activities within the meaning of § 4 of the Portal-to-Portal Act of 1947, 29 U.S.C. 251 et seq. (*See Truslow v.

*Spotsylvania County Sheriff*, 783 F. Supp.274 (E.D. Va 1992); *Nichols v. City of Chicago*, 789 F. Supp. 1438 (N.D. Ill. 1992).

20. Such work is compensable under the FLSA. **"Care"** also includes time spent in administering drugs or medicine for illness and/or transporting the dogs to and from an animal hospital or veterinarian. Id. Likewise, time spent training the dog at home is compensable as well as feeding and exercising the dog. *See Scott*, 629 F. Supp.2d at 271.

21. The following District Courts have found that Handlers were entitled to overtime pay because they were not compensated for their labor with respect to their assigned canine:

- *Truslow v Spotsylvania County Sheriff*, 783 F. Supp. 274 (E.D. Va 1992)
- *Nichols v City of Chicago*, 789 F. Supp. 1438 (E.D. Ill 1992))
- *Levering v District of Columbia*, 869 F. Supp. 24 (D.D.C. 1994)
- *Reich v New York City Transit Authority*, 45 F. 3d 646 (2nd Cir. 1995)
- *Andrews v Dubois*, 888 F. Supp. 213 (D. Mass. 1995)
- *Teece v City of Little Rock*, Arkansas, 923 F. Supp. 1122 (E.D. Ark. 1996)
- *Rudolph v Metropolitan Airports Commission*, 103 F. 3d 677 (8th Cir. 1996)
- *Mayhew v Wells*, 125 F.3d 216 (4th Cir. 1997)
- *Albanese v Bergen County*, New Jersey, 991 F. Supp. 410 (D.N.J. 1997)
- *Karr v City of Beaumont*, Texas, 950 F. Supp. 1317 (E.D. TX 1997)
- *Holzapfel v Town of Newburgh*, New York, 950 F. Supp. 837 (N.D.N.Y. 1997)
- *Baker v Stone County Missouri*, 41 F.Supp. 2d 965 (W.D. Miss. 1999)
- *Brock v City of Cincinnati*, 236 F. 3d 793 (6th Cir. 2001)
- *Howard v City of Springfield, Illinois*, 274 F. 3d 1141 (7th Cir. 2001)
- *Leever v Carson City*, Nevada, 360 F. 3d 1014 (9th Cir. 2004)

- *Letner v City of Oliver Springs*, 545 F. Supp. 2d 717 (E.D. Tenn. 2008)
- *Dixon v City of Forks*, 2009 U.S.Dist. LEXIS 44227 (W.D.Wash. May 26, 2009)
- *Scott v City of New York*, 604 F. Supp. 2 602 (S.D.N.Y. 2009).

**History of Handlers in New York City**

22. Virtually all other departments within New York City ("NYC") and in New York State provide Handlers with additional pay regardless of title.

23. On information and belief, NYC Corrections and NYC Department of Environmental Protection Police, which are NYC entities, provide handler pay regardless of the canine handler's civil service rank. In addition, on information and belief, the MTA Police, Nassau County, Suffolk County, Orange County Westchester County and Rockland County pay Handlers the additional handler pay regardless of civil service title.

24. On information and belief, NYC provided a retired police lieutenant with handler compensation prior to his retirement.

25. The willful failure of Defendant to lawfully compensate the Handlers for the care of their dogs is compounded by the fact that these "lost hours" impact their rate pay, overtime pay and future pension benefits.

26. Plaintiffs seek injunctive and declaratory relief for Defendant's unlawful actions, compensation for their failure to pay earned wages and liquidated damages, compensatory damages, pre-judgment and post-judgment interest, penalties and attorneys' fees and costs, pursuant to the FLSA.

## Jurisdiction and Venue

27. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c), and 217; and 28 U.S.C. § 1337.

28. Venue is proper in this district under 28 U.S.C. § 1391 (b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred herein.

## PARTIES

29. From June 16, 2017 to November 30, 2023, Lieutenant Pappas was employed by Defendant as a Handler.

30. From November 26, 2014 through August 11, 2022, Sergeant Brenner was employed by Defendant as a Handler.

31. From March 18, 2021 to the present, Sergeant Tabing has been employed by Defendant as a Handler.

32. From April 11, 2018 to the present, Sergeant Richardson has been employed by Defendant as a Handler.

33. From April 11, 2018 to September 6, 2023, Sergeant Jezsek has been employed by Defendant as a Handler.

34. From April 18, 2022 to the present, Sergeant Mateo has been employed by Defendant as a Handler.

35. From July 2, 2018 through April 30, 2022, Sergeant Graham was employed by Defendant as a Handler.

36. From October 7, 2017 through August 25, 2020, Lieutenant Corrigan was employed by Defendant as a Handler.

37. From December 5, 2022 through the present, Sergeant Rodriguez has been employed as a Handler.

38. From December 19, 2022 through the present, Sergeant Goggins has been employed as a Handler.

39. From December 14, 2022 through the present, Sergeant Sitko has been employed as a Handler.

**Defendant**

40. The City of New York was, and still is, at all times relevant herein, a municipal corporation duly incorporated and existing under and by virtue of the laws of the State of New York.

41. Defendant the City of New York, was, and still is, at all times relevant herein, a municipal entity created and authorized under the laws of the State of New York. It is authorized to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant the City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

**FACTS**

**Activities of Handlers**

42. At all relevant times, Defendant required Plaintiffs to train and care for police dogs.

43. As noted earlier, under the FLSA, Plaintiffs (because they are police officers) are required to be paid overtime at time and one half for work exceeding 171 hours in a 28 day work cycle.

44. Currently, with the exception of the basis for this lawsuit, Defendant pays Plaintiffs time and one half for work exceeding 171 hours in a 28 day cycle.

45. To properly train and care for Defendant's police dogs, the police dogs live in each respective Handler's home.

46. Defendant requires the Handlers, as a matter of policy and required procedure, to train, exercise and feed their assigned canines ("Care") in this manner, seven days a week, 365 days a year.

47. Handlers' job duties at their residences with their respective police dog include, but are not limited to, the following: teaching the dogs basic commands, obedience, walking, feeding, scent work training and exercising.

48. Police dogs perform between 30 and 40 hours of searching work each week, so it is imperative that the Handlers' police dogs are in optimal health.

49. Handlers will also take their assigned police dogs for veterinary care as necessary. When there is an emergency, Handlers are not compensated for emergency vet visits that occur during non-official work hours.

**Unpaid Work**

50. Upon information and belief, for the work described above, on days when Handlers are not at work, Handlers perform a minimum of approximately two hours of unpaid overtime work with respect to their assigned police dog.

51. Upon information and belief, for the work described above, on days when Handlers are at work, Handlers perform a minimum of approximately one and a half hours of unpaid overtime work with respect to their assigned police dogs.

52. Defendant is required to pay Plaintiffs for the time they spent feeding, grooming, exercising, caring for and training Defendant's police dogs that Defendant assigned to Handlers.

**28 Day Cycle**

53. As noted earlier, for FLSA purposes, Plaintiffs have a 28 day work cycle.

54. For example, February 25, 2024 through March 23, 2024 was a 28 day work cycle.

55. Plaintiffs usually work five days each week with two days off.

56. As a result, for work days Plaintiffs work approximately 30 hours each cycle with their assigned canine for which they are not compensated (1.5 times 20).

57. As a result, for non-work days, Plaintiffs work approximately 16 hours each cycle with their assigned canine for which they are not compensated (2 times 8).

58. As a result, Plaintiffs work approximately at least 46 hours each cycle for which they are not compensated.

**John Pappas**

59. Throughout his employment, Lieutenant Pappas worked a 28 day cycle where he was assigned to work 171 hours (unless directed to work overtime).

60. Throughout his employment, Lieutenant Pappas was paid hourly.

61. If Lieutenant Pappas was officially assigned to work more than 171 hours in a 28 day cycle, Lieutenant Pappas was paid overtime at time and one half.

62. The 171 hours did not include work Lieutenant Pappas performed with respect to his assigned dog, "Palla."

63. Generally speaking, Lieutenant Pappas was assigned to work five days a week.

64. On a non-work day, Lieutenant Pappas would work at least 2 hours with respect to Payla.

65. On an official work day, Pappas would work at least 1.5 hours with respect to Lieutenant Palla.

66. As a result, Lieutenant Pappas worked approximately 46 hours each cycle of behalf of Defendant for which he was not compensated.

67. For example, for the 28 day cycle from September 10, 2023 through October 7, 2023, Lieutenant Pappas worked (not inclusive of assigned overtime) his regularly assigned schedule of 171 hours.

68. In addition, for this cycle, Lieutenant Pappas worked approximately at least 16 hours on behalf of Defendant with respect to Palla on non-work days and at least 30 hours on behalf of Defendant with respect to Payla on work days.

69. As a result, for this specific cycle, Lieutenant Pappas worked approximately at least 46 hours of overtime for which he was not compensated.

**Marc Richardson**

70. Throughout his employment, Sergeant Richardson has worked a 28 day cycle where he is assigned to work 171 hours (unless directed to work overtime).

71. Throughout his employment, Sergeant Richardson is paid hourly.

72. When Sergeant Richardson is officially assigned to work more than 171 hours in a 28 day cycle, Sergeant Richardson is paid overtime at time and one half.

73. The 171 hours does not include work Sergeant Richardson performed with respect to his assigned dog, "Venable."

74. Generally speaking, Sergeant Richardson is assigned to work five days a week.

75. On a non-work day, Sergeant Richardson works at least 2 hours with respect to Venable.

76. On an official work day, Sergeant Richardson works at least 1.5 hours with respect to Venable.

77. As a result, Sergeant Richardson works approximately at least 46 hours each cycle of behalf of Defendant for which he is not compensated.

78. For example, for the 28 day cycle from October 8, 2023 through November 4, 2023, Sergeant Richardson worked (not inclusive of assigned overtime) his regularly assigned schedule of 171 hours.

79. In addition, for this cycle, Sergeant Richardson worked approximately at least 16 hours on behalf of Defendant with respect to Venable on non-work days and at least 30 hours on behalf of Defendant with respect to Venable on work days.

80. As a result, for this specific cycle, Sergeant Richardson worked approximately an additional 46 hours of overtime for which he was not compensated.

**Michael Goggins**

81. Throughout his employment, Sergeant Goggins has worked a 28 day cycle where he is assigned to work 171 hours (unless directed to work overtime).

82. Throughout his employment, Sergeant Goggins is paid hourly.

83. If Sergeant Goggins was officially assigned to work more than 171 hours in a 28 day cycle, Sergeant Goggins is paid overtime at time and one half.

84. The 171 hours did not include work Sergeant Goggins performed with respect to his assigned dog, "Jackie."

85. Generally speaking, Sergeant Goggins was assigned to work five days a week.

86. On a non-work day, Sergeant Goggins would work at least 2 hours with respect to Jackie.

87. On an official work day, Sergeant Goggins would work at least 1.5 hours with respect to Jackie.

88. As a result, Sergeant Goggins worked approximately at least 46 hours each cycle of behalf of Jackie for which he was not compensated.

89. For example, for the 28 day cycle from January 29, 2023 through February 25, 2023, Sergeant Goggins worked (not inclusive of assigned overtime) his regularly assigned schedule of 171 hours.

90. In addition, for this cycle, Sergeant Goggins worked approximately at least an additional 16 hours on behalf of Defendant with respect to Jackie on non-work days and at least 30 hours on behalf of Defendant with respect to Jackie on work days.

91. As a result, for this specific cycle, Sergeant Goggins worked approximately at least an additional 46 hours of overtime for which he was not compensated.

**Carmen Mateo**

92. Throughout her employment, Sergeant Mateo has worked a 28 day cycle where she is assigned to work 171 hours (unless directed to work overtime).

93. Throughout her employment, Sergeant Mateo is paid hourly.

94. If Sergeant Mateo is officially assigned to work more than 171 hours in a 28 day cycle, she is paid overtime at time and one half.

95. The 171 hours does not include work Sergeant Mateo performed with respect to her assigned dog, "Manny."

96. Generally speaking, Sergeant Mateo is assigned to work five days a week.

97. On a non-work day, Sergeant Mateo works at least 2 hours with respect to Manny.

98. On an official work day, Sergeant Mateo works at least 1.5 hours with respect to Manny.

99. As a result, Sergeant Mateo works approximately at least an 46 hours each cycle of behalf of Mateo for which she is not compensated.

100. For example, for the 28 day cycle from July 17, 2023 through August 13, 2022, Sergeant Mateo worked (not inclusive of assigned overtime) 170 assigned hours.

101. In addition, for this cycle, Sergeant Mateo worked approximately at least an additional 16 hours on behalf of Defendant with respect to Manny on non-work days and at least 30 hours on behalf of Defendant with respect to Manny on work days.

102. As a result, for this specific cycle, Sergeant Mateo worked approximately at least an additional 45 hours of overtime for which she was not compensated.

**Kristopher Jezsek**

103. Throughout his employment, Sergeant Jezsek worked a 28 day cycle where he was assigned to work 171 hours (unless directed to work overtime).

104. Throughout his employment, Sergeant Jezsek was paid hourly.

105. If Sergeant Jezsek was officially assigned to work more than 171 hours in a 28 day cycle, Sergeant Jezek was paid overtime at time and one half.

106. The 171 hours did not include work Sergeant Jezsek performed with respect to his assigned dog, "Stan."

107. Generally speaking, Sergeant Jezek was assigned to work five days a week.

108. On a non-work day, Sergeant Jezsek worked at least 2 hours with respect to Stan.

109. On an official work day, Sergeant Jezsek worked at least 1.5 hours with respect to Stan.

110. As a result, Sergeant Jezsek worked approximately 46 hours each cycle of behalf of Stan for which he was not compensated.

111. For example, for the 28 day cycle from January 3, 2021 through January 30, 2021, Sergeant Jezsek worked 204 assigned hours (this includes assigned overtime).

112. For this cycle, Sergeant Jezek worked approximately at least an additional 16 hours on behalf of Defendant with respect to Stan on non-work days and at least 30 hours on behalf of Defendant with respect to Stan on work days.

113. As a result, for this specific cycle, Sergeant worked approximately at least an additional 46 hours of overtime for which he was not compensated.

**Jaime Sitko**

114. Throughout his employment, Sergeant Sitko has worked a 28 day cycle where he is assigned to work 171 hours (unless directed to work overtime).

115. Throughout his employment, Sergeant Jezek is paid hourly.

116. If Sergeant Sitko is officially assigned to work more than 171 hours in a 28 day cycle, he is paid overtime at time and one half.

117. The 171 hours did not include work Sergeant Sitko performed with respect to his assigned dog, "Quaid."

118. Generally speaking, Sergeant Sitko is assigned to work five days a week.

119. On a non-work day, Sergeant Sitko works at least 2 hours with respect to Quaid.

120. On an official work day, Sergeant Sitko works at least 1.5 hours with respect to Quaid.

121. As a result, Sergeant Sitko works approximately at least 46 hours each cycle of behalf of Quaid for which he is not compensated.

122. For example, for the 28 day cycle from Auguat 11, 2024 through September 7, 2024, Sergeant Sitko worked (not inclusive of assigned overtime) an assigned 171 hours.

123. For this cycle, Sergeant Sitko worked approximately at least an additional 16 hours on behalf of Defendant with respect to Quaid on non-work days and at least 30 hours on behalf of Defendant with respect to Quaid on work days.

124. As a result, for this specific cycle, Sergeant Sitko worked approximately at least an additional 46 hours of overtime for which he was not compensated.

**Edwin Rodriguez**

125. Throughout his employment, Sergeant Rodriguez works a 28 day cycle where he is assigned to work 171 hours (unless directed to work overtime).

126. Throughout his employment, Sergeant Rodriguez is paid hourly.

127. If Sergeant Rodriguez is officially assigned to work more than 171 hours in a 28 day cycle, he is paid overtime at time and one half.

128. The 171 hours does not include work Sergeant Rodriguez performed with respect to his assigned dog, "Arianna."

129. Generally speaking, Sergeant Rodriguez is assigned to work five days a week.

130. On a non-work day, Sergeant Rodriguez works at least 2 hours with respect to Arriana.

131. On an official work day, Sergeant Rodriguez works at least 1.5 hours with respect to Arriana.

132. As a result, Sergeant Rodriguez works approximately at least 46 hours each cycle of behalf of Arianna for which he is not compensated.

133. For example, for the 28 day cycle from February 1, 2023 through February 25, 2023, Rodriguez worked 183 assigned hours.

134. For this cycle, Sergeant Rodriguez worked an least additional 16 hours on behalf of Defendant with respect to Arianna on non-work days and at least 30 hours on behalf of Defendant with respect to Arianna on work days.

135. As a result, for this specific cycle, Sergeant Rodriguez worked approximately an additional 46 hours of overtime for which he was not compensated.

**Brenda Graham**

136. Throughout her employment, Sergeant Graham worked a 28 day cycle where she was assigned to work 171 hours (unless directed to work overtime).

137. Throughout her employment, Sergeant Graham was paid hourly.

138. If Sergeant Graham was officially assigned to work more than 171 hours in a 28 day cycle, Sergeant Graham was paid overtime at time and one half.

139. The 171 hours did not include work Sergeant Graham performed with respect to her assigned dog, "O'Leary."

140. Generally speaking, Sergeant Graham was assigned to work five days a week.

141. On a non-work day, Sergeant Graham would work at least 2 hours with respect to O'Leary.

142. On an official work day, Sergeant Graham would work at least 1.5 hours with respect to O'Leary.

143. As a result, Sergeant Graham worked approximately at least 46 hours each cycle of behalf of Defendant for which she was not compensated.

144. For example, for the 28 day cycle of March 28, 2021 through April 24, 2021, Sergeant Graham worked approximately 170 (not inclusive of overtime) assigned hours.

145. For this cycle, Sergeant Graham also worked approximately at least 16 hours on behalf of Defendant with respect to O'Leary on non-work days and at least 30 hours on behalf of Defendant with respect to O'Leary on work days.

146. As a result, for this specific cycle, Sergeant Graham worked at least approximately an additional 45 hours of overtime for which she was not compensated.

**Randy Brenner**

147. Throughout his employment, Sergeant Brenner worked a 28 day cycle where he was assigned to work 171 hours (unless directed to work overtime).

148. Throughout his employment, Sergeant Brenner was paid hourly.

149. If Sergeant Brenner was officially assigned to work more than 171 hours in a 28 day cycle, Sergeant Brenner was paid overtime at time and one half.

150. The 171 hours did not include work Sergeant Brenner performed with respect to his assigned dog, "Shaunie."

151. Generally speaking, Sergeant Brenner was assigned to work five days a week.

152. On a non-work day, Sergeant Brenner would work at least 2 hours with respect to Shaunie.

153. On an official work day, Sergeant Brenner would work at least 1.5 hours with respect to Shaunie.

154. As a result, Sergeant Brenner worked approximately at least 46 hours each cycle of behalf of Defendant for which he was not compensated.

155. For example, for the 28 day cycle of May 21, 2023 through June 17, 2024, Sergeant Brenner worked (not inclusive of overtime) his regularly assigned schedule of 171 hours.

156. For this cycle, Sergeant Brenner worked at least 16 hours on behalf of Defendant with respect to his assigned dog on non-work days and 30 hours on behalf of Defendant with respect to his assigned dog on work days.

157. As a result, for this specific cycle, Sergeant Brenner worked approximately at least 46 hours of overtime for which she was not compensated.

**Christopher Tabing**

158. Throughout his employment, Sergeant Tabing has worked a 28 day cycle where he is assigned to work 171 hours (unless directed to work overtime).

159. Throughout his employment, Sergeant Tabing is paid hourly.

160. If Sergeant Tabing is officially assigned to work more than 171 hours in a 28 day cycle, he is paid overtime at time and one half.

161. The 171 hours does not include work Sergeant Tabing performs with respect to his assigned dog, "Billy."

162. Generally speaking, Sergeant Tabing is assigned to work five days a week.

163. On a non-work day, Sergeant Tabing works at least 2 hours with respect to Billy.

164. On an official work day, Sergeant Tabing works at least 1.5 hours with respect to Billy.

165. As a result, Sergeant Tabing worked approximately at least 46 hours each cycle of behalf of Billy for which he was not compensated.

166. For example, for the 28 day cycle from January 29, 2023 through February 25, 2023, Sergeant Tabing worked (not inclusive of assigned overtime) 171 assigned hours.

167. For this cycle, Sergeant Tabing worked approximately at least 16 hours on behalf of Defendant with respect to Billy on non-work days and at least 30 hours on behalf of Defendant with respect to Billy on work days.

168. As a result, for this specific cycle, Sergeant Tabing worked approximately at least an additional 46 hours of overtime for which he was not compensated.

## FIRST CAUSE OF ACTION
### UNPAID OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

169. Plaintiffs repeat, re-allege and incorporate by reference all allegations in all preceding paragraphs.

170. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendant and protect Plaintiffs.

171. Defendant willfully failed to pay Plaintiffs the appropriate overtime premiums for all hours worked in excess of 171 hours in a 28 day cycle, as required by the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations.

172. Defendant's unlawful conduct, as described in this Complaint, has been willful and intentional. Defendant is aware or should have been aware that the practices described in this Complaint were unlawful. Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

173. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

174. As a result of Defendant's willful violations of the FLSA, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, pre-judgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the entry of an order and judgment against Defendant the City of New York, as follows:

(a) Damages for the unpaid overtime wages due to Plaintiffs, in an amount to be determined at the trial of the action, along with liquidated damages as provided by the FLSA;

(b) For prejudgment and post judgment interest on the foregoing amounts;

(c) For the costs and disbursements of the action, including attorney's fees; and,

(d) For such other further and different relief as the Court deems just and proper.

Dated: June 4, 2024
New York, New York

**THE LAW OFFICES OF JACOB ARONAUER**

By: */s/ Jacob Aronauer*
Jacob Aronauer
250 Broadway, Suite 600
New York, NY 10007

**THE LAW OFFICES OF DAVID I. ABOULAFIA**

By: */s David Aboulafia*
David Aboulafia
1482 Indiana Avenue
Yorktown Heights, NY 10598

*Attorneys for Plaintiffs*